```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF MISSISSIPPI
                HATTIESBURG DIVISION


JEANETTE BYRD                                        PLAINTIFF


VS.                               CIVIL ACTION NO. 2:03CV104TSL-MTP


WYETH, INC. F/K/A/ AMERICAN HOME
PRODUCTS; WYETH PHARMACEUTICALS
F/K/A WYETH-AYERST PHARMACEUTICALS,
INC.; AND DOES 1 THROUGH 10                         DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Wyeth, Inc. f/k/a American Home Products and Wyeth Pharmaceuticals, Inc. f/k/a Wyeth-Ayerst Pharmaceuticals, Inc. (collectively Wyeth) for summary judgment. Plaintiff Jeanette Byrd has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be denied.

On January 8, 1999, plaintiff Jeanette Byrd filed a voluntary petition for bankruptcy protection under Chapter 13 of the Bankruptcy Code. Her plan was confirmed by the bankruptcy court on May 4, 1999. Three years later, on May 22, 2002, Byrd was diagnosed with breast cancer. She filed the present product liability lawsuit against Wyeth on December 23, 2002, alleging her breast cancer was caused by her ingestion of hormone replacement

therapy drugs manufactured by Wyeth.  On March 20, 2003, approximately three months after plaintiff filed her lawsuit against Wyeth, the bankruptcy court entered its order discharging her debts upon completion of her plan.

In its present motion, Wyeth invokes the doctrine of judicial estoppel, contending that plaintiff's claim in this cause became property of the bankruptcy estate, notwithstanding that it arose post-confirmation, and that consequently, plaintiff had a duty to disclose the claim to the bankruptcy court.  It contends that because she failed to amend her bankruptcy schedules to disclose the claim prior to the bankruptcy court's discharge order, she is barred from pursuing it.  See Jethroe v. Omnova Solutions, Inc., 412 F.3d 598, 600 (5th Cir. 2005) (explaining that "[a] court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently," and stating that "[j]udicial estoppel is particularly appropriate where ... a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset") (citing In re Coastal Plains, 179 F.3d at 206-07).  In response, Byrd argues principally that in a Chapter 13 bankruptcy proceeding, claims that accrue post-petition are not property of the

2

bankruptcy estate such that there is no duty to disclose such claims. She submits, though, that even if the court concludes otherwise, the law on this issue is complex and unclear and that because of this, her failure to disclose her claim against Wyeth was inadvertent, so that judicial estoppel cannot be applied to bar her claim, or alternatively that the court, in the exercise of its discretion in this matter of equity, should permit her to pursue her claim.

The court has thoroughly considered the parties' arguments and the authorities cited, and is of the opinion that even if the requirements of judicial estoppel are satisfied, application of judicial estoppel in the circumstances of this case would be "an inappropriate use of the court's equitable powers." Woodard v. Taco Bueno Restaurants, Inc., Civil Action No. 4:05-CV-804-Y, 2006 WL 3542693, 11 (N.D. Tex. Dec. 8, 2006). As explained in detail by the court in Woodard, two sections of the Bankruptcy Code, 11 U.S.C. § 1306 and 11 U.S.C. § 1327, create a contradiction as to the proper treatment of a Chapter 13 debtor's assets acquired after confirmation. Id. at *5. Section 1306 states that the bankruptcy estate includes property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1). However, § 1327 provides, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of

3

the property of the estate in the debtor ... free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(b)-(c).  Thus, "Section 1306 seems to indicate that the bankruptcy estate continues in existence until the case is closed, dismissed, or converted, and all assets acquired by a debtor during this time are the property of the estate if those assets are of the kind specified in section 541. ... On the other hand, section 1327 clearly indicates that all property in the bankruptcy estate at confirmation is vested in the debtor free and clear of any claims."  Id. See also Gilbreath v. Averitt Exp., Inc., Civil Action No. 09-1922, 2010 WL 4554090, *9 (W.D. La. Nov. 3, 2010)(observing that "while Section 1306 indicates that the bankruptcy estate continues to accrue assets after confirmation of a debtor's Chapter 13 plan, a plausible reading of Section 1327 is that any property a debtor acquires post-confirmation is owned free and clear by the debtor and excluded from the bankruptcy estate") (citing Woodard, 2006 WL 3542693, at *5).  The court in Woodard noted that the Fifth Circuit had not addressed the issue of this apparent contradiction, and four United States circuit courts which had considered the issue had "adopted separate approaches to determine the appropriate disposition of assets that a chapter 13 debtor acquires after confirmation."  Id.

> The first approach, sometimes called the estate-
> termination approach, takes the view that all property

>    of the estate becomes the property of the debtor upon
>    confirmation and ceases to be property of the estate.
>    ...
>    The second approach, sometimes called the estate-
>    preservation approach, takes the view that all property
>    of the estate remains property of the estate after
>    confirmation until discharge, dismissal, or conversion.
>    ...
>    The third approach accomplishes the King Solomon
>    solution by "splitting the baby." Sometimes referred to
>    as the estate-transformation approach or the
>    middle-of-the-road approach, it holds that only such
>    property necessary for the execution of the confirmed
>    plan remains property of the bankruptcy estate after
>    confirmation.  Any remainder passes free and clear to
>    the debtor.
>    ...
>    The fourth approach takes the view that by virtue of
>    section 1327, all property of the estate at the time of
>    confirmation vests in the debtor free and clear of any
>    claims of the creditors but that the bankruptcy estate
>    does not cease to exist.  Instead, the bankruptcy estate
>    continues to be funded by the debtor's regular income
>    and assets acquired post petition as specified under
>    section 1306.

Id. at *5-7 (citations omitted).  The Woodard court found all these approaches unacceptable and opted for a fifth approach under which the debtor, upon confirmation, "is given an immediate and fixed right to the future enjoyment of the bankruptcy estate," but this future enjoyment occurs only after the debtor "has faithfully completed his obligations under the plan and is entitled to discharge."  Id. at *9.  The court ultimately concluded that "at the commencement of a chapter 13 proceeding, an estate is created that continues to exist until the proceeding is closed, dismissed, or converted.  Any assets the chapter 13 debtor acquires after

5

commencement but prior to discharge must be disclosed to the bankruptcy court." Id. at 11.

However, although the court found a duty to disclose claims that accrue post-confirmation, the court nevertheless found it would be inequitable to apply judicial estoppel to bar the plaintiff's claim. In so concluding the court noted that while it believed it had crafted a logical approach to the conundrum presented by the apparent clash between §§ 1306 and 1327, it acknowledged that at the time the plaintiff's cause of action arose, "the status of a debtor's post-confirmation assets and his duty to disclose them was uncertain at best. Even the most versed in bankruptcy law are unclear on this issue. And whether the Fifth Circuit will bless this Court's reconciliation of sections 1306 and 1327 is highly debatable." Id. The court did recognize that "ignorance of the law is hardly ever an excuse and, especially relevant here, our circuit does not excuse a debtor's ignorance of his duty to disclose." Id. (citing Jethroe, 374 F.3d at 336). But it also acknowledged that unlike other legislation, the Bankruptcy Code in its entirety "is highly technical and its comprehension requires a specific expertise not possessed by most lay persons and often, not possessed by competent lawyers," id., and it observed that the Supreme Court has refused to apply the maxim "ignorance of the law is no excuse," with respect to highly technical statutes that present "'the danger of ensnaring

6

individuals engaging in apparently innocent conduct.'" Id. (quoting Bryan v. United States, 524 U.S. 184, 194 (1998)). Ultimately, the Woodard court found that the question of the proper interpretation of the Bankruptcy Code provisions was an issue for another day and another court, and that for its purposes, what was relevant – and in the end, determinative – was the fact that the law was complex, unclear and unsettled.  The court wrote:

> The Supreme Court has stated that the factors for considering the appropriateness of judicial estoppel "do not establish inflexible prerequisites or an exhaustive formula for determining [its] applicability ... additional considerations may inform the doctrine's application in specific factual contexts." New Hampshire v. Maine, 197 U.S. at 751. The Court concludes that, in cases such as this, an exception must also be made where the law is unclear and unsettled.  To impose judicial estoppel against one whose duty is unclear would violate a fundamental principle in our jurisprudence: people are entitled to fair notice of what the law is before being held accountable under it. See U.S. Const. amend. V.  Although our jurisprudence does not require actual knowledge of the law in order to be held accountable under it, even a just application of the notion of constructive knowledge relies on the law's being clear and having been published to the public. Here, neither is the case. The law is not clear and because it is not clear, it has not been made known to the public.
>
> The primary purpose of the judicial-estoppel doctrine is to protect the integrity of the judicial process by preventing a party from abusing that process in an effort to gain an unfair advantage in litigation.  It was not designed to estop the pure of heart, whose only sin is ignorance of unsettled law, and, at the same time, grant a windfall to a litigant who may very well be liable for wrongful conduct.  For that reason, the Court concludes that Woodard's failure to disclose his

7

> cause of action under this factual situation based on what was an honest mistaken belief that he had no duty to disclose it amounts to inadvertence. Accordingly, the Court declines, under the factual circumstances of this case, to judicially bar Woodard from pursuing his employment- discrimination claims.

Id. at 10-11.

The court in Gilbreath, supra, likewise declined to apply equitable estoppel where the Chapter 13 debtor failed to disclose a cause of action that accrued post-confirmation. Gilbreath, 2010 WL 4554090, at *9.  The court found that the interpretation of the conflicting Code provisions offered by the court in Woodard "best promotes the goals of Chapter 13 and best harmonizes Section 1306 and Section 1327," and thus it found that the plaintiff had a duty to disclose her cause of action that accrued post-confirmation but prior to discharge. Id. at 6.  Yet the court also agreed with Woodard that it would be inequitable under the circumstances to bar the plaintiff's claims.  In addition to the fact of the unresolved debate – at least unresolved by the Fifth Circuit – over whether Chapter 13 debtors must disclose assets acquired post-confirmation, also weighing against estoppel was the fact that the plaintiff had made no affirmative false statements but had instead failed to amend her initial schedule of assets to disclose a claim that arose three years after confirmation.  The court considered that "[a]lthough bad faith is not an element of judicial estoppel, the doctrine is ultimately an equitable one,

and Gilbreath's lack of bad faith weighs in her favor as a matter of equity." Id. at 9.

The facts in the case at bar are indistinguishable from those in Woodard and Gilbreath, and this court, as were those courts, is firmly of the view that it would be inequitable to bar this plaintiff from pursuing her claim.  Whether she had a duty to disclose remains an open question in this circuit, and certainly, the law on the issue at the time her claim accrued in 2002 was even murkier than it is today.[1]  Because the court concludes the equities favor plaintiff's being permitted to pursue her claim, the court will deny Wyeth's motion for summary judgment.

Based on the foregoing, it is ordered that Wyeth's motion for summary judgment is denied.

SO ORDERED this 15th day of February 2012.

                                /s/Tom S. Lee
                                UNITED STATES DISTRICT JUDGE

---

[1] Wyeth asserts that this court's decision in Sims v. Big Lots Stores, Inc., Civ. Action No. 4:06CV27LN, 2006 WL 2805137 (S.D. Miss. Sept. 28, 2006), definitively decided the issue presented.  Clearly, it does not.  But even if it did, Sims was decided in 2006, three years *after* plaintiff's bankruptcy was discharged.  It could hardly have provided any guidance on the issue during the relevant time period.

9